## Watson *against* Watson.

In a case of intestacy, advancements by a father to his children, must be brought into hotchpot, in estimating the distributive share of each. But if, after advancements, a will be made, the intention of the testator respecting them is matter of fact, determinable from the will, and to which may be added extrinsic evidence.

ERROR to the common pleas of *Northumberland* county.

Mary Watson against David and John Watson, executors of John Watson deceased. - This was an action for a legacy brought for the purpose of determining the character of charges contained in the book of the testator against his children, and how they were to be estimated in the final settlement of the estate.

The case is so minutely stated in the opinion of the court, as not to require repetition.

*Hepburn* and *Greenough*, for plaintiff in error.
*Frick* and *Jordan*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—This case arose on a dispute between Mary, a daughter and legatee of John Watson, and the executors of his will.

It may be right to state, that the counsel of the executors stated distinctly, that this suit was brought, because of some difficulty and difference of opinion among the legatees as to what was due each under the will, and that they, the executors, were willing to pay in any manner which should be decided to be right.

John Watson made his will in 1814, it was proved on the 7th of January 1815. The parts of it material in this case are as follow:

"I bequeath to my daughters, Isabella Brown, wife of John Brown, Esq., Catharine Shaw, wife of &c., Margaret S. Curry widow, Polly Watson, and Nancy Bennet, wife of &c., (the part of the said Isabella, to be divided among the children of said Isabella Brown, except so much thereof as my executors may see proper to give her for her support, and that of her family) all my plantation near Derstown, which shall be sold by my executors, and all the money I shall be possessed of, and all debts due me by bond or otherwise; all which money, when said plantation is turned into money in manner aforesaid, shall be divided equally between my daughters aforesaid, viz: Catharine, Susanna, Mary, Nancy, and the children of my daughter Isabella Brown, to them, their mother's part with the exceptions in her favour beforemen-

[Watson v. Watson.]

tioned, to them, their heirs, executors, administrators or assigns forever."

1000 dollars were given to the widow of the testator, out of the devise to the daughters.

And he charges his sons and daughters each, with an equal portion of the price of tombstones for his own and his wife's grave.

The executors filed an inventory, in which were the following items: Debts 2979 dollars and 17 cents; cash 1177 dollars and 75 cents. And 1247 dollars 53 cents debts against his children, viz: Chatharine Shaw, 745 dollars 19 cents; Margaret S. Curry, 362 dollars 67 cents; Nancy Bennet, 139 dollars 67 cents.

The plantation devised to be sold and the price given to the daughters, was sold, and the money divided among the daughters, and there is no contest about that.

Very soon after the death of the testator, Catharine Shaw and her husband settled with the executors, and according to that settlement, were paid in full, and gave a receipt.

The charges in the books of the testator were as follows:

CATHARINE SHAW,
Dr. to JOHN WATSON,

| | £ | s | d |
|---|---|---|---|
| 1798, August 4—To sundries bought of John Tietsworth, | 11 | 1 | 6 |
| " 8—To William Pollock, Milton | 1 | 4 | 2 |
| " To making two dresses and bonnet in Milton, | 1 | 3 | 3 |
| 1806, February 20—To one mare at | 25 | 0 | 0 |
| " To sundries, furniture | 36 | 0 | 0 |
| " June 2—To one cow at | 5 | 0 | 0 |
| " September 2—To cash, | 75 | 0 | 0 |
| 1808, May 4—To cash, 300 dollars, | 112 | 10 | 0 |
| " To horse, | 100 | 0 | 0 |
| 1812, May—To cash, | 100 | 0 | 0 |
| | £466 | 18 | 11 |

MARGARET SUSANNA CURRY,
Dr. to JOHN WATSON,

| | £ | s | d |
|---|---|---|---|
| To cash, 350 dollars, | 131 | 5 | 0 |
| To one cow, | 5 | 0 | 0 |
| | £136 | 5 | 0 |

NANCY BENNET,
Dr. to JOHN WATSON,

| | £ | s | d |
|---|---|---|---|
| To one mare, price | 25 | 0 | 0 |
| To one cow, | 5 | 0 | 0 |
| | £30 | 0 | 0 |

[Watson v. Watson.]

| | | | |
|---|---|---|---|
| To rent of a field, - - | $40 00 | | |
| To rent of a fallow field, - | 66 67 | | |
| To rent of twenty-eight acres, at | 83 33 | | |
| | | $190 00 | |
| This is Bennet's own acknowledging, - - | | 270 00 | |
| Deduct, - - - - - | | 13 00 | |
| | | $257 00 | |

It was admitted that the items in the account amounting to 190 dollars, and the deduction of 13 dollars were written since the death of the testator by the executors, at some settlement or attempt at settlement between them, but of what date did not appear.

It was stated that Bennet and wife had brought suit many years ago in Union county, and then there was a final end of the contest by allowing the amount charged in the book as a part of her share.

Catharine Shaw's deposition was read in this case—she stated, " that during the life of her father, she received certain *advancements* from him, amounting to 466 pounds 18 shillings and 11 pence, which are charged against her in her father's book, that the charges against her in the book are in a sense correct, she having received that much from her father, or from his brother David for him."

She then states, that she had an interest in some property in Philadelphia, which she conveyed to her father, which entitled her to a deduction of 187 pounds 10 shillings from the charge in the book. That in the settlement of her interest in her father's estate, the said sum of 500 dollars was deducted from the charge in the book, all the family knowing the matter to be as stated by her, and acknowledging the sum to be right, nor has she ever heard of any objection to the same until lately; that she settled with her brothers for her full interest in the estate, and received satisfaction.

The settlement with Catharine was exhibited. In it, the executors added together the debts from strangers, the cash and sums charged to the three daughters, which amounted to 5404 dollars and 45 cents.

The amount stood thus:

| | | | |
|---|---|---|---|
| Amount in register's office for heirs of John Watson, | | $5405 45 | |
| By cash paid widow, | $1000 00 | | |
| Other expenses, - | 231 24½ | | |
| | | 1234 24½ | |
| Divide in shares, - - - | | 5)4173 20½ | |
| | | 834 64 | |
| Catharine Dr. to estate, - - | | 745 19 | |
| Due Catharine and paid her, - - | | $89 45 | |

[*Watson v. Watson.*]

The other heirs claim all the interest on the notes and bonds, &c., due the testator, and some of them think Catharine should pay interest, as she received 745 dollars and 19 cents, so long before they received any thing.

In other words, they claimed that the sums charged by the testator to his three daughters, were included in the words in the will, " all debts due me, by bond, *or otherwise.*

The counsel for the executors contended here, that the charges in the book against the three daughters were not *debts* in the meaning of the will, but ought to be left out in the settlement with the other heirs, and then the account will stand thus:

```
Debts due the testator,        $2979 17
Cash,        -        -        -     1177 75
                                ----------
                                            $4156 92
Deduct to be paid widow,        -      $1000
Expenses, and 5 per cent. on sale of
    Derstown farm and 6 per cent. interest,   200
                                            ---------    1256 00
Divided into five shares,       -        -      5)2900 92
                                            ----------
                                                $580 18½
```

This will give Mary, the present plaintiff, about 580 dollars and 18 cents as her share, instead of 834 dollars and 64 cents, and, as she has received a great part of her claim, will leave her at the commencement of this suit, in the situation of having received too much, instead of not enough.

Perhaps, when a father makes a charge or charges against some of his children, to whom he has devised property or money, he generally means that in case of his dying intestate, these advances shall be taken into account, in settling his estate and equalising it among his children; if he intends making a will, they may be wanted as memoranda of what he has done for each.

If he dies intestate, a child claiming a part, must bring into hotchpot what he has received. If a will is made, it must, unless there is other evidence, depend on the will how such charges are to be considered; but matters extrinsic to the will, or testimony may be used, to show whether money or goods were intended as advancements or to be paid for.

An advancement is a gift, and cannot be recovered back; if it be more than a child's proportion of the estate, the child can keep it.

If not an advancement, the charges are debts, and executors could recover them, if proof of them could be obtained, and the statute of limitations was not pleaded. It will be observed, they are not charges, with perhaps some small exceptions, which are subjects of proof by book entry. And also, that there is no date to either of the two last, and Catharine's is of very old dates.

VI.—2 H

[*Watson v. Watson.*]

Mrs. Bennet was also examined, and stated " father charged us in his book what he gave us before he died."

The evidence was properly admitted, and the effect of it, and the truth of it, properly submitted to the jury. The court did not submit to the jury to decide on the true construction of the will, but to say, whether the sums delivered to some of his children, were, on the evidence given, put into their hands as part of their shares in his estate, or as loans, or sales for which they might be sued. The fact of a settlement with Catharine, on principles known and agreed to by all the family, and the suit and decision with Bennet and his wife, or as one side said, settlement in accordance with the opinion of the court, was entitled to great weight. After long acquiescence in it, with full knowledge of it, there would be something very unreasonable, if not positively unjust, in saying that the executors should have charged Catharine interest, sued her, and recovered what she had received more than an equal proportion of the personal estate left by the testator; and if the executors after settling and paying Catharine on the principles above, should now say there was only about 3000 dollars to be divided, and Mary, and the others only entitled to about 600 dollars each, and thus retain in their own hands the difference between that sum and 834 dollars 64 cents, the sum allowed to Catharine and Mrs Bennet, this would be unreasonable and unjust on their part.     If Catharine and Mrs. Bennet settled on the principle that each of them was to be charged with what she had received as part of her legacy, it left so much the more in the hands of the executors; but this, not for the benefit of the executors, but as being the property of the other legatees, and the executors cannot say it does not belong to such legatees.

There is nothing in the will, or in the case, *to show that the exe-*cutors ought to have sued the three sisters for the amount charged in the book against each; on the face of the books there could have been no recovery.     The statute of limitations would have protected Catharine at least.     But if a father gives money to a married daughter and charges it in his book, can he recover it from her husband? Was such a suit ever supported, or can it be? must not the husband be privy to the matter, and agree to accept it as a loan of so much, before he can be liable.     The sisters who settled, and have been charged with what they received, have done all that could have been asked of them.     The others have nothing to complain of against the executors, for so settling—and after so settling with them, the executors must pay over the balance to the others; they cannot retain it for themselves; their counsel say they do not wish to do so.

There is another error assigned.     The court said " whether these charges are debts or advancements, is left to the jury to decide upon a consideration of the evidence of Mrs Shaw, and Mrs Bennet; the statement of the executors in the inventory, and

[*Watson v. Watson.*]

in the account subsequently to Catharine Shaw, in connection with the nature of the charges in the book." The error is alleged in mentioning the inventory or the acts of the executors as having any effect in varying the character of the bequest; and taken alone, they could have no effect: but when a case is submitted to a jury, it is not error to submit it on all the legal evidence given in the cause. As to the settlement with Catharine, she proves that it was with the knowledge and approbation of the whole family, and it is said above, the acquiescence of the rest, until it was impossible to unravel what had been done, was proper to be considered by both court and jury.

Judgment affirmed.