## Case No. 18,044.

### In re WORK et al.

[30 Leg. Int. 361.] [1]

Circuit Court, W. D. Pennsylvania. May 12, 1873.

BANKRUPTCY PROCEEDING—REVIEW BY CIRCUIT COURT — DISSOLUTION OF FIRM — SUBSEQUENT BANKRUPTCY OF PARTNER.

1. Revisory jurisdiction of the circuit court, under the second section of the act of March 2, 1867 [14 Stat. 517], over the proceedings in bankruptcy in the district court. Within what time relief must be sought.

2. The 36th section of the same act only applies to partnerships existing at the time of petition filed. Where a partnership had dissolved, made a general assignment in trust for creditors, the members residing in different districts, and more than a year afterwards, one of the partners filed his individual petition in bankruptcy, praying an adjudication of bankruptcy, against himself and his late copartners, no partnership assets appearing upon the schedules. *Held,* that this was not a case for a joint proceeding, as though the copartnership still continued.

[In review of the action of the district court of the United States for the Western district of Pennsylvania.]

In bankruptcy. The copartnership of Work, McCouch & Co., of the city of Philadelphia, bankers and brokers, consisting of Samuel Work and William McCouch, of said city, in the Eastern district of Pennsylvania, and Allen Kramer, Florence Kramer, and Edward Rahm, of the city of Pittsburgh, in the Western district of the same state, failed in the month of May, 1866, heavily indebted; on the 9th day of June, 1866, the partners in Pittsburgh made a general assignment of their copartnership and individual property in trust for their creditors, to one Thomas Moore, and on the 14th day of the same month, the partners in Philadelphia executed a similar deed to George Sergeant, Esq. On the 25th day of July, 1867, Florence Kramer filed his petition in the district court of the United States for the Western district of Pennsylvania, in bankruptcy, praying that himself and his copartners in the firm of Work, McCouch & Co. might be adjudged bankrupts. No partnership assets appeared in the schedules annexed. His copartners appeared upon the orders to show cause, submitted to an adjudication of bankruptcy, and the matter was so proceeded in that Florence Kramer obtained a discharge from his debts on July 3, 1868, and Edward Rahm, Samuel Work and William McCouch obtained theirs on December 23d, of the same year. Allen Kramer died without having applied for a discharge. On September 5, 1870, Henry W. Hook, a creditor to the amount of $30,200, who had unsuccessfully resisted the discharge of the said bankrupts in the district court, presented his petition under the second section of the act of March 2, 1867, to the circuit court, setting forth the foregoing facts, and praying that the discharges granted to the said bankrupts might be annulled. The court allowed said petition to be filed and ordered the bankrupts to appear and plead answer or demurrer thereto in thirty days. To this petition a special demurrer was filed, raising the question of the application being in time, and also meeting the case made by it upon its legal merits.

Nathan H. Sharpless and D. C. Watson, for petitioner. (1) That the petition was filed in time. The cases under this section holding that it need not be filed within the ten days allowed for an appeal from the district to the circuit court (In re Alexander [Case No. 160]), but that it must be filed within a reasonable time. Upon the question of what is a reasonable time in this case, the act itself furnishes an analogy in the 34th section, allowing the creditor two years in the district court to contest the validity of his debtor's discharge. (2) The proceedings in the district court were entirely irregular, and so far as Samuel Work and William McCouch were concerned, without jurisdiction. At the best they can only be supported as individual proceedings on behalf of Florence Kramer. The 36th section of the act under which they were had, only applies to partnerships existing at the time of petition filed, or at all events to those where there are partnership assets to surrender to the assignee in bankruptcy. The words of the act are, "where two or more persons who are partners in trade shall be adjudged bankrupts," &c. Here the firm had been dissolved more than a year when the petition in bankruptcy was filed. The two assignments to Messrs. Moore and Sergeant worked a dissolution of the copartnership by operation of law. Moddewell v. Keever, 8 Watts & S. 63; Cochran v. Perry, Id. 262; Horton's Appeal, 1 Harris [13 Pa. St.] 67.

Upon the making of the assignments all dealings of the copartnership ceased, and at the time of the petition filed in bankruptcy, there were no assets of the firm to be administered in that forum. Under the circumstances, the joint proceeding was unwarranted by the act of congress, and as to Messrs. Work and McCouch, the bankrupt court was without jurisdiction over their persons, and acquired none by reason of their relations to the subject matter of the proceedings before it on the petition of Florence Kramer. Citing Bump, Law & Prac. Bankr. p. 53 et seq.; In re Crockett [Case No. 3,402]; In re Penn [Id. 10,927]; In re Winkens [Id. 17,875].

Hopkins & Lazear (with whom were John C. Bullitt and Samuel Dickson, for Work & McCouch) contra.

Before McKENNA, Circuit Judge, and McCANDLESS, District Judge.

The court, after consideration by McKENNA, Circuit Judge, delivered a verbal opinion, and directed the entry of the following decree. "And now, May 12th, 1873, the de-

---

[1] [Reprinted by permission.]

murrer and bill of review having been argued by counsel pro and con, and duly considered by the court, the demurrer is overruled and the decree of the district court is reversed as to Edward Rahm, Samuel Work, and William McCouch.

WORK v. BAILEY.　See Case No. 2,814.

## Case No. 18,045.

### The WORKMAN.

[1 Low. 504.] [1]

District Court, D. Massachusetts. 1870.

DAMAGE TO TOW—LIABILITY OF TUG.

1. A tug, in towing a ship, brought her against a wharf. *Held,* that the tug was liable in damages, although the ship was rotten and unseaworthy, unless the condition of the vessel was the sole cause of the injury.

[Cited in The M. J. Cummings, 18 Fed. 183.]

2. The damages in such a case are the natural and necessary consequences of the collision to the vessel in her actual state of repair.

The steam tug Workman was hired to tow the bark White Wing from Fiske's wharf in Boston into the stream, and farther if required. The master of the tug made his boat fast to the port side of the ship, ordered the lines of the latter to be cast off, and steamed ahead. Presently the starboard side of the bark's stern came in contact with the wharf, but was soon cleared, and after they had proceeded a short distance it was found that the stern of the vessel had come off. The master of the tug had the control and charge of the navigation of both vessels. Several of the timbers of the stern were rotten, and a very considerable proportion of the repairs put on the vessel would not have been necessary but for this state of her works.

T. H. Russell, for libellant.

J. C. Dodge, for respondent.

LOWELL, District Judge. The libellant contends that, however rotten his ship may have been, the tug had no right to hit her against the wharf, and is justly responsible for the natural consequences of the act. On the other part, this general proposition is not denied; but it is maintained that the state of the timbers was the sole cause of the damage, and the blow only such a slight touch as every vessel is liable to receive in coming to or going from her wharf, and that no negligence, therefore, can be argued from the result, and that none has been proved. That the mere act itself had no naturally injurious consequences. The vessel was not old, and had been taken good care of, but dry rot had attacked her stern, without the knowledge of the owner. The unexpected discovery of her actual state was said by one of the witnesses to be a very fortunate circumstance for her owner, because it may probably have saved her from a worse disaster. It seems clear that the bark was not sound, staunch, and seaworthy, as alleged by the libellant; and if this is a material and traversable averment it must be found against him. But there is no warranty of seaworthiness in a contract of towage, and the claimants cannot prevail upon this point, taken by itself, unless the evidence shall go the full length of showing that the whole damage was due to the state of the vessel. As, for instance, in any ordinary cause of collision, it would be immaterial that the injured vessel was insufficiently manned, or in any other respect unseaworthy, or even badly navigated, unless the defect caused or contributed to the disaster. Still less if a vessel were run into, would it be a defence that a stronger vessel would not have been injured. The undisputed fact that the tow was brought against the wharf with greater or less violence calls upon the tug for an explanation. The explanation given is that the motion of the vessels was very slow, and the blow very slight, such as ought not to injure a seaworthy vessel. The difficulty I have found with this defence is that it does not account for the blow itself. If it were shown that, by the usual and necessary course of navigation, a vessel must be expected to touch the ground or any other object at a certain point, a tugboat could not be held to guarantee her against touching there. And, of course, any sudden squall or other accident may be shown. But there is nothing of the sort shown here under either alternative. It is said that vessels often touch the wharf, but not that they usually strike it as this vessel did. She was swung round in such a way as to bring her stern against some part of the wharf, and, although the evidence is conflicting concerning the respective parts of vessel and wharf that were struck, and the force of the blow, I am not satisfied that it was a mere touch, to be overlooked as being one of the ordinary and necessary incidents of towage, like wear and tear. It is a hard case, undoubtedly, because it will be very difficult to draw a perfectly just and equitable line in the award of damages. I shall endeavor to do this as far as possible. My decision at present merely is that I cannot deprive the libellant entirely of damages, because I cannot be assured that the fault is wholly to be found in the defective character of his vessel.

Interlocutory decree for libellant. Damages to be assessed.

WORKMAN (DURKEE v.). See Case No. 4,195.

WORKMAN (UNITED STATES v.). See Case No. 16,764.

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]