## Wright's Appeal.

1. A testator held notes of his son, which were dated prior to the date of his will. In his will he stated a certain sum as due to him from said son, and then declared, " should I make any further advances I will charge the same in my account-book as heretofore." No further charge could be found after testator's death. In the will testator also spoke of this sum due from the son as " loaned" to him. *Held*, that notwithstanding the use of the word " loaned," the notes were to be considered as part of an advancement, and not as a separate debt; that the words " advanced" and " loaned" were used interchangeably.

2. Technical rules of construction must give way to the plainly expressed intention of a testator; and when, in aid of a written instrument, its intention can be gathered from undoubted proofs, the equities of parties claiming under it are not to be overthrown by a rigid adherence to one alternative meaning of an equivocal technical word.

3. If, after advancements, a will be made, the intention of the testator is matter of fact determinable from the will itself, and from extrinsic matters and testimony.

February 5th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Orphans' Court of *Philadelphia county:* Of January Term 1879, No. 60.

Appeal of George Wright from the decree of the court upon the adjudication, by Penrose, J., of the executors' first account in the matter of the estate of Isaac K. Wright, deceased. The material facts will be found in the opinion of this court.

*W. W. Ledyard* and *J. C. Stillwell*, for appellant.—It was plainly the endeavor of the testator to distribute his whole estate among the beneficiaries and settle all questions as to charges, and after making several specific bequests, dividing all the remainder into seven parts, he then stated that he desired certain sums to be deducted from these respective parts. Too much stress should not be laid on the precise signification of words. Technical rules of construction must yield to the expressed intention of the testator : Reck's Appeal, 28 P. F. Smith 432. Particular expressions standing in the way of the general intention of a testator must be construed in subordination to it, or disregarded : Musselman's Estate, 5 Watts 9 ; Schott's Estate, 28 P. F. Smith 40 ; Middlesworth's Adm'r *v.* Blackmore, 24 Id. 414. It was not so much the wish of the testator to fix the character of the advances as it was to fix the amount of money which should be considered as due from his children to him. If, after advancements, a will be made, the intention of the testator respecting them is matter of fact, determinable from the will and extrinsic evidence : Watson *v.* Watson, 6 Watts 254. Including the notes in the inventory did not prejudice the appellant Bell's Estate, 1 Casey 92 ; Hutchinson's Appeal, 11 Wright 92.

[Wright's Appeal.]

*Joshua Pusey* and *George W. Thorn*, for appellees.—It is not to be assumed that the testator did not comprehend the difference between a debt and an advancement.

In his will testator speaks of advances, and as to these no interest was charged. The notes held by him against the appellant were the evidence of a debt on which interest was charged. It is, therefore, evident that the loans and advances referred to by him in the will were for moneys that he had given strictly as advancements, whilst the debts, whether for merchandise sold to his sons or moneys loaned them, for which he had taken their written obligations, were considered by him in a different light; that is, as debts to be paid by them to his executors.

It is further submitted that the burden of proof to show that the debts apparently owed by the children, as evidenced by writing, were identical with those loans or advances mentioned in the will, laid on the parties making the allegation; and in the absence of clear proof to that effect, it must fairly be held that these debts were due the testator, in addition to the sums mentioned in the will.

Mr. Justice WOODWARD delivered the opinion of the court, March 3d 1879.

When Isaac K. Wright died on the 18th of February 1875, he held two notes of his son, George Wright, for $2554.89 and $650, respectively, dated the 8th of April 1869, and payable ten days after date. Whether the amount of these notes ought to be treated as a debt due to the decedent's estate or as an advancement to be adjusted under the directions of the decedent's will, is the only question presented for inquiry and determination.

The will was executed on the 18th of October 1873, four years and a half after the notes were given. In the residuary clause, after a gift of one-seventh of the residue of his estate to each of his five surviving children, of one-seventh to the children of a deceased daughter, and one-seventh to the children of a deceased son, the testator proceeded to define the pecuniary relations existing between his children and grandchildren and himself. He said: "I have loaned sundry amounts of money to my children and some of my grandchildren, as hereinafter set forth, which loans I wish to be considered as advances to them, and to be taken as money due from them to me, and in the distribution of my estate amongst them, to be deducted from his, her or their share thereof. To this time I have advanced to my daughter, Sarah Kenderdine, the sum of three thousand dollars; * * * to my son, George Wright, four thousand dollars." The concluding sentence of the residuary clause was in these words: "Should I make any further advances to them, I will charge the same in my memorandum or account book as heretofore." Four codicils were added to the will, the last of which bore

date the 9th of November 1874, and in none of them was the charge against George changed.

Upon the notes of the appellant to the testator the receipt of interest to the 8th of October 1870 was endorsed, and another endorsement of the words " no more interest to be charged on the within notes," was made on the 2d of February 1875. The notes themselves were given in lieu of other notes previously held by the testator. The consideration for them had been in part coal sold, and in part and mainly, money lent. No " memorandum or account book" making additional charges against his children or grandchildren was found after the testator's death. Two of the executors in filing their account included the notes in controversy as assets of the estate. The claim was resisted by the appellant, on the ground that they were part of the advancement the will had charged against him. At the audit, he was called as a witness by the executors. He admitted, that including the amount of the notes, he had received from his father about $5000. His testimony has not been brought up, but it was found as a fact by the adjudicating judge that, " a large part of what he had received in excess of the sum mentioned in the will, was after his failure in business and when he was in a state of actual want. It was given to him in small sums of $5, $10 and $20." With none of these sums did his father charge him after the will was executed. The adjudicating judge held the charge in the will to have embraced the notes, and treated them as part of the advancement made to the appellant. A different view was adopted by the Orphans' Court. The notes were held to be exclusive of the charge for advancements, and to be evidences of indebtedness for which the appellant was bound to account.

Beyond the terms of the will and some proof relating to two bonds held by the testator against a son-in-law and another son, there was no evidence bearing on the question in dispute, except the testimony of the appellant himself. The effect of the decree below was to increase his liability to the estate, from $4000 to $7204.89. He testified that his indebtedness for everything given, advanced or lent him did not exceed $5000, and part of this was received after he failed in business, and after the will was made. Between the sum charged against him and the principal of the note, there was a margin of $795.11, and nothing outside of his own admission has been found to show how or when or whether any part of that margin had been advanced. The notes alone may well have been in the testator's mind. It was found by the adjudication that, " with interest added to the date of the will, they are very nearly the exact sum charged."

It has been strongly urged on behalf of the appellees, that the testator declared that he had " loaned" certain moneys to his children and grandchildren, debts owing by them to him were not

intended to be included in the amounts severally specified. But the word "advanced" was used in immediate connection with the schedule in which the appellant's liability to account in the distribution was declared. Besides, the notes were given mainly for moneys lent. They were in existence long before the will was executed, and the description of such moneys as "loans" or as "advancements" was not absolutely inapt. Under all the circumstances surrounding these parties, and in the light of the precedents by which cognate questions have been settled, it must be held that it was the purpose of the testator to make the charge for advances substantially equal to the debts the appellant owed him. The word "loaned" and the word "advanced" were used interchangeably. They are to be construed in view of the facts that have been either admitted or ascertained. It has often happened that the stringent application of even a strictly technical word has worked grievously unjust results. "All mere technical rules of construction must give way to the plainly expressed intention of a testator:" SHARSWOOD, J., in Reck's Appeal, 28 P. F. Smith 432. And when, in aid of a written instrument, its intention can be gathered from undoubted proofs, the equities of parties claiming under it are not to be overthrown by a rigid adherence to one alternative meaning of an equivocal technical word. If, after advancements, a will be made, the intention of the testator is matter of fact determinable from the will itself, and from extrinsic matters or testimony to show whether money or goods were intended as advancements or to be paid for: HUSTON, J., in Watson v. Watson, 6 Watts 254. In the absence of direct evidence accompanying a gift, the question of advancement must be determined from a consideration of the surrounding facts: Knabb's Estate, 30 Leg. Int. 361. Yundt's Appeal, 1 Harris 575, which was relied on by the counsel for the appellees at the argument, belongs to a large class of cases, which have settled the rule that a debt due by a son-in-law cannot be converted by proof of a testator's subsequent parol declarations into an advancement to his daughter. The facts developed before him fully justified the decision of the adjudicating judge. It is certain that any charge against the accountant beyond $5000 would be excessive and undue. The amount of money he received after the execution of the will has not been shown. But he received some amount, and while it cannot be said positively that any charge beyond $4000 would be unjust, it may be said positively that such a charge would be unsafe.

There was nothing in the receipt given by the appellant to the executors for $4204.89 (including the amount of the notes and the $1000 paid him), on account of his share under the will, and nothing in the surrender of the notes to stand in the way of the present assertion of his rights. He did not admit the liability alleged against him. Neither the executors nor the other distributees have

[Wright's Appeal.]

been prejudiced. And his creditors have acquired rights under their attachments which no voluntary act on his part could be permitted to destroy.

> Decreee reversed and record remitted. And it is now adjudged and decreed that in the re-distribution of the estate of Isaac K. Wright, deceased, the charge against George Wright, the appellant, for advancements, be limited to $4000; that the distributive share of the said George Wright be held subject to the claims of his attaching creditors; and that the costs of this appeal be paid out of the funds of the estate.