## Harrison's Estate.

*John R. K. Scott* and *William T. Connor,* for exceptant.
*R. M. Remick* (of *Saul, Ewing, Remick & Saul*), contra.

STEARNE, J., March 12, 1929.—Testator left surviving a widow, four children and issue of a deceased child. One of his children was a son, J. Kearsley M. Harrison. The will was dated May 23, 1927, the eighth paragraph of which reads as follows:

". . . I forgive my son Kearsley . . . any advances which may be charged against . . . [him] upon my books as of the date of this will."

Appearing on the books of the testator at that date were two accounts relating to financial transactions with the son. One was styled "J. Kearsley M. Harrison Advancement a/c," in which the son was charged with a balance of $60,000. The other was termed "J. Kearsley M. Harrison Loan a/c," which shows a balance due by the son to testator of $12,870.88, and for which testator held, and his estate still holds, the son's note.

The Auditing Judge ruled that the foregoing clause of the will exonerated the son from the repayment of the loans in addition to the advancements. We are unable to concur in this ruling.

*Advance,* in its strict legal sense, does not mean *advancement.* It has a different and far broader signification. An advance is usually a loan, or money

advanced to be repaid conditionally. An advancement is money given by a parent to his children as a portion of his estate and to be taken into account in the final distribution thereof: 2 Corpus Juris, 32; Bouvier's Law Dictionary (Rawle's 3rd Revision), 151; 1 Words and Phrases, 214; Mosser Co. v. Cherry River B. & L. Co., 290 Pa. 67, page 70.

Because the testator used the technical word "advances," the ruling of the Auditing Judge was to the effect that the testator used the word in its strict technical legal sense and, therefore, included the loans in his exoneration.

Under the facts of this particular case, it does not necessarily follow that testator did employ the word in such strict legal and technical sense. *Advance* and *advancement* are sometimes used synonymously: 2 Corpus Juris, 33; High's Appeal, 21 Pa. 283, page 287.

In contracts, "the word (advances) has no such certain meaning that the court can determine the sense in which the term is used by the parties without examining the contract as an entirety and seeking the aid of the surrounding circumstances and the practical construction of the contract by the parties themselves:" 2 Corpus Juris, 33. Such a statement appears equally applicable in the construction of wills.

It is well settled that where testator did not intend to employ words or terms in their technical sense, the court will not give them that meaning, but, if possible, will construe them so as to effectuate his apparent intention: Wright's Appeal, 89 Pa. 67; Walker v. Shugert, 292 Pa. 433, pages 438-439.

We are not persuaded that we are required to imply an intent that the word "advances" was employed in its strict technical sense, because otherwise the clause becomes mere surplusage. It may be conceded that *advancements* are extinguished by the mere execution of a will upon the testator's decease: Newell's Will, 1 P. A. Bro. 311; Krieder v. Boyer, 10 Watts, 54; 32 Am. Law Reps. 731. But surplusage is frequently discovered in wills: Seagrist's Appeal, 10 Pa. 424; Smith v. Porter, 1 Binney, 208, page 210. However, implied intention must fall in the face of the expressed and apparent intention of the testator. This is particularly true when defining the meaning of such a doubtful and equivocal term as "advances."

In our opinion, the testator, by his own acts, construed his own will. We are, therefore, relieved from resorting to rules of construction or technical definitions of particular words: Thompson's Estate, 229 Pa. 542, page 546. We can attribute no other intention to testator than his use of the word "advances" as synonymous with advancements. When he *loaned* money to his son he took and retained notes to insure the repayment thereof. Such transactions he entered in his account books under "Loan a/c." On the other hand, *gifts* to the son were entered under "Advancement a/c." Obviously, testator recognized the distinction between the nature of the two transactions. It seems clear that all testator intended to extinguish were those gifts charged against the son on the books entered in the "advancement a/c." Under these circumstances, the use of the word "advances" did not include loans charged in the "Loan a/c," and for which testator took, and continued to retain, his son's notes.

The exceptions are sustained.

HENDERSON, J., dissenting.—These exceptions involve the interpretation of the word "advances" in the eighth paragraph of the will, which reads as follows:

". . . I forgive my son Kearsley . . . any advances which may be charged against . . . [him] upon my books as of the date of this will."

I agree with the majority opinion that the word "advances" primarily relates to both debts and advancements. I can find no justification for interpreting this word in its secondary meaning, *i. e.*, limiting it to advancements alone. In the absence of such justification, the primary meaning of this word should prevail, *i. e.*, loans and advancements.

Furthermore, in that advancements are not deducted from legacies, the word "advances" as used in the will means nothing unless it relates to loans.

I would dismiss the exceptions.