## Shoemaker's Estate

*James H. Booser* of *McNees, Wallace & Nurick,* for petitioner.

*William M. Young* and *David Putney,* contra.

SHEELY, P. J., fifty-first judicial district, specially presiding, January 15, 1943. — Helen Shoemaker, a daughter of decedent, has filed a petition praying that the stubs of 27 checks be probated as the will of decedent. A responsive answer to the petition was filed by Dorothy Shoemaker Larsen, another daughter, and the petition and answer were certified to this court by the register of wills under the authority of section 19 of the Register of Wills Act of June 7, 1917, P. L. 415, 20 PS §1982. Testimony on the petition and answer was taken along with testimony on exceptions to the account of the administratrix, and a consolidated record made. The petition to admit the check stubs to probate will be adjudicated in this opinion.

From the testimony we find as facts that from November 5, 1923, to October 3, 1933, decedent, who was

a practicing attorney in the City of Harrisburg, issued 36 checks to or for the account of his daughter, Dorothy Larsen, making various notations on the stubs of his checkbook. At about the time he began issuing checks to her he told his wife that all such amounts would be marked against the daughter's inheritance. After having his bank book balanced he attached the canceled checks to the appropriate stubs and retained the old checkbooks as records. In the early part of 1930 decedent suffered a nervous breakdown and was a patient in a hospital for a period of time. He went to the hospital again in 1931, returning home several weeks prior to July 11, 1931. During the time he was in the hospital his wife noticed the canceled checks in his checkbooks and, upon his return, they discussed these checks. On Saturday afternoon, July 11, 1931, decedent suggested to his wife that they would go to the office and look over the checks and mark them. At that time decedent and his wife discussed the checks and on 27 of them he made the notation: "Charge D. L.'s Int. in H. S. Est. H. S. 7-11-31," or "Charge D. L.'s Interest in H. S. Estate. H. S. 7-11-31." At that time one check, No. 2342, in the sum of $900, was discussed. Decedent told his wife it was a loan and had been repaid. No notation was made on the stub of that check.

It is admitted that the notations made on the check stubs on July 11, 1931, were in the handwriting of decedent and that the initials "H. S." were placed thereon by him. It was also admitted that "D. L." referred to Dorothy Larsen. We have no difficulty in finding that decedent on that date was possessed of testamentary capacity, and that no undue influence was practiced upon him. The question presented is whether the 27 checks and stubs constitute testamentary writings which may be probated.

The first question is whether the writings are testamentary in character. In Frew et al. v. Clarke, 80 Pa. 170, 178, the court said:

"A will is defined to be the legal declaration of a man's intentions, which he wills to be performed after his death: 2 Black. Com. 500; Bouv. Law Dic.; 1 Jarman on Wills 11. An instrument in any form, whether a deed poll or indenture, if the obvious purpose is not to take place till after the death of the person making it, shall operate as a will: Habergham v. Vincent, 2 Ves. Jr. 204. It may be by an endorsement on a note: Hunt v. Hunt, 4 N. H. 434; or by letter: Morell v. Dickey, 1 Johns. Ch. 153. Whatever be the form of the instrument, if it vests no present interest, but only directs what is to be done after the death of the maker, it is testamentary: Turner *et al.* v. Scott, 1 P. F. Smith 126. The essence of the definition is, that it is a disposition to take effect after death: Redfield on Wills 5; Turner v. Scott, *supra.* Nor does it matter that the person intended to make a note instead of a will. If he used language which the law holds to be testamentary, his intention is to be gathered from the legal import of the words he employed: Id. No form of words is necessary to make a valid will. The form of the instrument is immaterial, if its substance is testamentary: Patterson v. English, 21 P. F. Smith 458; see also Rose v. Quick, 6 Casey 225; Frederick's Appeal, 2 P. F. Smith 338."

In the present case the notations made by decedent definitely referred to his daughter's interest in his estate. He had no estate in which she could have an interest except the estate which would be created at his death. He was directing something to be charged against that interest, and was therefore making a legal declaration of his intentions which he willed to be performed after his death. That he made no specific disposition of the balance of his estate would not destroy the testamentary character of the writing. He was a lawyer; he knew he had not previously executed a will and that his estate would be distributed to his wife and two daughters in equal shares under the intestate

laws. This is evident when he referred to Dorothy's interest in his estate which could arise only under the intestate laws.

The case most nearly in point is Kissinger's Estate, 292 Pa. 336, 337, wherein the decedent left a writing providing that there should be given to his daughter-in-law, Mary M. Kissinger, the sum of $7,500, and providing that "At the distribution of my estate by the Orphans' Court $7,500 shall be deducted from the share of my son, Clifford W. Kissinger . . . ." It was argued on behalf of the son that an heir could not be disinherited by negative words and that decedent did not, by the writing, dispose of any part of his estate and did not leave any direction as to how it should be divided. The Supreme Court held that the writing was testamentary and that: "In effect he said all my estate is to be distributed under the intestate laws except $7,500 of my son's share thereof and that shall go elsewhere." See also Kohl's Estate, 19 Montg. 182, and Condry v. Coffey, 43 S. W. (2d) 928. Similarly, in this case, decedent was satisfied to have his estate distributed to his wife and daughters in equal shares except that he desired Dorothy's share to be charged with the amount of these checks. This is not the equivalent of saying that a certain amount should be deducted from her share without disposing of that amount. By directing that her interest in the estate should be charged with the amount of checks paid to or for her, he was directing that these amounts should be brought into the fund for distribution and that she should receive her share of the whole: Watson v. Watson, 6 Watts 254, 257 (1837).

It is clear, from the care with which decedent kept his checkbooks and attached his canceled checks thereto, that he regarded them as records to be preserved. It is also clear that when he went to his office on Saturday afternoon, July 11, 1931, and made the notations on the check stubs, he intended the notations to have

some effect. That effect was to be more than as memoranda for his own use because he went to the formality of dating and initialing the entries. The inference is that he expected others to examine and pass upon the records and that he desired to make it certain that he personally had made the notations. The notations were to have an effect of their own, in some cases different from that of the original notation on the stub as, for example, check no. 1950 which was originally marked "gift", but was noted to be charged against Dorothy's interest in his estate.

We conclude that the notations on the stubs were testamentary in character. The second question presented is the effect of executing the notations with his initials.

We have no difficulty in concluding that when decedent placed his initials at the bottom of the various notations he did so intending them as his signature to a completed instrument. The testimony clearly shows his custom of using his initials as a signature, and that is confirmed by his letter of January 31, 1930, to his daughter, Dorothy. In Knox's Estate, 131 Pa. 220 (1889), the court said (p. 231):

"As already seen, the English and some American cases hold that a signature by initials only, or otherwise informal and short of the full name, may be a valid execution of a will or a contract, if the intent to execute is apparent."

In Wilson's Estate, 88 Pa. Superior Ct. 556, 561, the court said:

"In all of the cases in our Supreme Court since Knox's Estate, supra, in which the question was, what is a sufficient signature under the Wills Acts of 1833 and 1917, the decision turned on the question, whether the word affixed was intended as a signature."

See also Plate's Estate, 148 Pa. 55, Swire's Estate, 225 Pa. 188, 192, Churchill's Estate, 260 Pa. 94, 100,

Kimmel's Estate, 278 Pa. 435, 441, and Pilcher v. Pilcher, 117 Va. 356, 84 S. E. 667, L. R. A. 1915D 902.

The one remaining question is the effect of there being 27 separate check stubs. In that we see no difficulty. In Hancock's Appeal, 112 Pa. 532 (1886), four separate writings bearing different dates and having no internal connection were proved as a will and codicils thereto, the codicils bearing earlier dates than the will itself. The court commented (p. 539) :

"The testator had a fashion of making short, isolated bequests of portions of his estate to legatees named, on loose slips of paper, saying nothing whatever about the residue of his estate."

In Grubb's Estate, 174 Pa. 187, three pieces of paper bearing the same date, each signed by decedent, and each reciting that it was her will, one giving certain property to one person, the second giving the remainder of her property to other persons, and the third providing that her husband should have none of her property and giving reasons therefor, were held to be properly admitted to probate as her will.

Even applying the rule of Davis' Estate, 344 Pa. 520, that the several sheets of paper must be connected in their internal sense, that test is met in this case by the fact that all stubs in question bear the same date; the testimony shows that they were written at the same time and really constituted one act; and all are affixed to the checkbooks. The question in that case, however, was entirely different. There the question was whether separate sheets of paper, not complete in themselves and depending upon each other, could be probated together as a will. That is an entirely different proposition than a number of writings each of which is a completed instrument. Any one of the check stubs in this case would constitute a complete testamentary writing. There being no inconsistencies between them, and all having been written at the same time, there is no reason why all should not be probated together as repre-

senting the entire will of the decedent. There being no evidence that any other sheets of paper existed, the presumption must be that none but those produced for probate were present at the time of the execution: Wikoff's Appeal, 15 Pa. 281, 289.

We conclude that the notations on the 27 check stubs are testamentary in character; are signed at the end thereof by testator with the intention to execute a will; and that together the notations represent the last will of decedent.

And now, January 15, 1943, it is ordered and decreed that the 27 checks and check stubs with the notations thereon offered for probate be received and admitted to probate as the will of Homer Shoemaker, deceased.