JANUARY TERM, 1882, No. 167.                    APRIL 3D, 1882.

# Carman's Appeal.

1. There is nothing in the language of the statute of wills to prevent a widow who accepts what is given to her under a will, from taking in addition her share of that part of the estate as to which the testator died intestate.

2. The accidental omission of a residuary clause in a will, though the intention of the testator may be conjectured, cannot be supplied.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, and GREEN, JJ. STERRETT, J., absent.

Appeal of Martha Carman from the decree of the Orphans' Court of *Philadelphia County*, adjudicating upon the account of Julianna B. Carman, executrix of the will of Hudson Carman, deceased.

Hudson Carman died January 24th, 1880, leaving a last will and testament, in which he devised and bequeathed as follows:

"I hereby give and bequeath to my wife, Julianna B. Carman, all the furniture, and every other article of what kind soever it may be, in any way used or connected with housekeeping, including books, pictures, and engravings, silver and silver-plated ware, and also my wardrobe, watch and chain, and all personal ornaments, and all moneys in the house at the time of my decease.

"I also further give and devise to my said wife, Julianna B. Carman, her heirs and assigns forever, the house and lot, with all its privileges and appurtenances, numbered 1127, on the north side of Spruce Street, in the said city of Philadelphia, wherein I now reside.

"I also further give and devise to my wife, the said Julianna B. Carman, her heirs and assigns forever, all that yearly rent or sum of $322, lawful silver money, payable in half-yearly payments on the first days of March and September, in each and every year, issuing out of a certain piece of ground situate at the north-east corner of Broad and Sassafras streets, in the said city of Philadelphia, which said

yearly rent I now hold under a certain deed recorded, etc. . . . . .

" I also give, devise, and bequeath to my wife, the said Julianna B. Carman, my burial lot, No. 175, in Section D, in the Woodland Cemetery, containing 355 square feet, and all the privileges thereto pertaining, the certificate whereof is dated the first day of September, 1860, to hold to her and her assigns as fully as I possessed the same.

" I also further give and bequeath to my said wife, Julianna B. Carman, the following loans and stocks, now held by me, that is to say: (The will then describes specifically and in detail certain bonds and stocks.)

" And I hereby order and direct that the certificates and vouchers for the loans and stocks before mentioned, shall be transferred to my wife, the said Julianna B. Carman, so soon after my decease as conveniently may be, and that she shall receive, for her own use, the interest and dividends that may fall due and payable thereon from and after my decease, as well as those which may have fallen due and not have been received by me in my lifetime.

" And I do hereby constitute and appoint my said wife, Julianna B. Carman, executrix of this my said last will and testament, giving hereby my said executrix full power and authority, at her discretion, to retain as they now exist all other investments, or to sell the same, or any part thereof, and invest the proceeds of such sale or sales, until the final settlement of my estate, in legal securities."

The testator left surviving him a widow and sisters, and the issue of deceased brothers.

The widow elected to take under the will. As executrix she filed an account showing the entire amount of the personalty to be $109,990.19, which included the specific legacies to the widow, amounting to $60,151, and she claimed commissions of three per cent. upon the whole sum, or $3299.70.

The heirs of the testator objected to the commissions.

The Court below, HANNA, P. J., filed an adjudication, *inter alia*, as follows:

" In view of these facts, there would seem to be force in the objections made to the amount of the commissions claimed. As is well established, the term ' commissions ' should be understood as signifying the compensation to be allowed for labor, services, and responsibility. There is no fixed rate, and the amount allowed varies according to the circumstances of each case. In the present instance there was no evidence offered as to the labor and services required of accountant in the settlement of the estate, or of the responsibility incurred by her. It must be presumed, there-

fore, that none but the ordinary trouble was imposed, and the regular and usual services performed. It is evident that but slight services were necessary to take charge of and transfer the legacies specifically bequeathed, and no responsibility whatever to other parties. So far, then, there is little need of compensation. But still, as to the remainder of the estate, the accountant would be entitled to compensation, and the auditing judge has concluded to allow, not any rate of commissions, but a fixed sum in gross for what appears to have been the trouble, services, and responsibility of accountant in the care of and conversion of the assets of the estate, the custody of its funds, and subsequent distribution. The sum of three thousand dollars is accordingly allowed accountant as compensation for services, etc., to the present time. Should it become necessary to sell and convert the remaining assets of the estate, such other compensation will be allowed upon the settlement of a further account as seems just and proper.

" As, perhaps, has been observed from the references to the will of testator, he makes no disposition of the residue of his estate.

" Mr. Law, therefore, claimed, on behalf of the widow, that, as her husband must be considered as having died intestate as to the undisposed-of portion or residue of his estate, and having left no issue, she was entitled absolutely to one-half part of the residue.

" On the contrary, Mr. Price contended, that the widow, having taken under the will, was barred from any other participation in the estate. And from the generous provision made for her by testator, his intention is clear that she should not take any further share of the estate. Mr. Price, therefore, claimed that the entire residue should be awarded to the collateral heirs.

" The question thus presented, in the opinion of the auditing judge, is free from doubt. The election of the widow only applies to the provisions of the will, and so much of testator's estate therein included, not to that part which is affected by the law relative to cases of intestacy. There is no election as to that, nor can she be called upon to say what proportion of such an estate she will claim to take. Whatever estate the testator omits to dispose of falls within the grasp of the law and its distribution is by it directed. If it be admitted that this testator died intestate as to the undisposed-of balance of his estate, then there is an end to the controversy, and it must be distributed according to the provisions of the intestate law. He died without issue, so that his widow is entitled to one-half of the residue of his personal estate ab-

solutely. Without entering upon an extended review of the Act of Assembly upon the subject of the widow's interest in her late husband's estate, or of the cases defining the nature and effect of the election to take under or against the will, it will suffice to refer to the latest case upon the subject : Reed's Appeal, in 1 Norris, 428, where the right of the widow to take her share under the intestate law, although she had elected to take under the will, is fully recognized and determined.

" The accountant, as widow of testator, will therefore be awarded one-half of the balance of the residuary personal estate, and the other half part will be awarded to the collateral heirs."

The Court made distribution accordingly.

Exceptions were filed by the collateral heirs, which the Court, December 3d, 1881, dismissed.

Martha Carman, one of these heirs, then appealed, assigning as errors the dismissal of the exceptions, that the judge erred in allowing the accountant $3000 for her trouble, etc., and in adjudicating that the widow was entitled to one-half of the residue of the personal estate, and in refusing to award the whole of the residue to the heirs at law.

*J. F. Byrnes* and *William S. Price,* for the appellant.

It was evidently the intention of the testator to measure and specify in his will what portion of his estate should be enjoyed by his widow, and thus exclude her from the residue. Every provision is for her, and, when more than two-thirds of his estate has been thus disposed of, the testator manifests that all of his intentions in her behalf have been fulfilled by ceasing to bequeath any more to her. Then, as may be deduced from the will, having made this generous provision for his wife in lieu of her statutory rights, the testator leaves the residue for his heirs. Under the Acts of April 8th, 1833, and April 11th, 1848, the widow had a right to elect between the provisions made for her in the will and her statutory rights, but she could not take both nor part of one and part of the other. The choice of one is the exclusion of the other.

It seems to be the law, that, to enable a widow to take personal estate under the Act of 1848, she should elect not to take under the last will and testament of her husband.

This is a condition precedent : Hinnershits *v.* Bernhard's Ex., 1 Harris, 521 ; Anderson's Appeal, 12 Casey, 476.

In this case the widow did just the opposite : see Crane *v.* Crane, 17 Pick., 422 ; Adams *v.* Adams, 5 Metc., 277 ; Collins *v.* Carman, 5 Md., 503.

The allowance of $3000 for compensation was too large, upon the principle stated by the Court in view of the circumstance of the case.

*R. C. McMurtrie*, for the appellee.

If the testator intended to dispose of the residue, he failed to carry out his intentions. What his intentions were is unknown to the Court. As a matter of fact, he did not dispose of that part not specifically devised or bequeathed.

The claim of the widow to share in the undisposed of residue does not rest on the Act of 1848, but upon the first section of the Act of 1833.

The rule that gives her the right was enacted in section 11th, of the Act of 1807: Darrah *v.* McNair, 1 Ashmead, 236.

It is a mere vulgar error that an expressed intention to disinherit the heir will exclude him. *A fortiori* if the intention is only to be gathered from the fact that a legacy has been given to one who is also a distributee: Redfield on Wills, part II. p. 589; Johnson *v.* Johnson, 4 Beavan, 318; Wilson *v.* Wilson, 3 Binney, 557.

If her election to take under the will excludes her from taking under the intestate law, who is to take? If the intestate law is to be obeyed, she is to have one-half.

This is the first time that any one has suggested, that, because an executor is a beneficiary under the will, he is not entitled to the same compensation as a stranger: Pusey *v.* Clemson, 9 S. & R., 204.

APRIL 17TH, 1882.—PER CURIAM: If, as is probable, a residuary bequest in the will of Hudson Carman was an accidental omission, it is an omission we cannot supply. We may conjecture that it was intended after the liberal provision made to his widow the residue should go to his next of kin, but it would only be conjecture. We see nothing in the language of the statute of wills to prevent a widow accepting what is given to her under a will taking her share also of so much of the estate as to which the testator dies intestate.

Decree affirmed and appeal dismissed at the costs of the appellant.