# Thompson's Estate.

*Wills—Intention of testator—Certainty of language—Expenses of administration—Widow's exemption—Intestacy.*

1. Where there is no ambiguity or uncertainty in the language used by a testator in disposing of his estate, and no conflict in the different provisions of the will, his intention must be ascertained from the words employed in the will; and no rules of construction, or general scheme of distribution attributed to the testator, can be permitted to defeat it.

·2. Where a testator has first provided for his wife, giving her one-half of all his personal property less $2,500, the income from the real estate until same is sold, and the use of his house, following this with certain pecuniary bequests to collaterals, and concluding with separate directions to the executors to sell the personal property as soon as convenient, and to sell the real estate as soon as they think best, with power to dispose of it in fee or for a term of years, the widow, by accepting the terms of the will, is entitled under its provisions to one-half of the whole personal estate which the testator owned. If the remaining half is in excess of the amount required to pay the pecuniary legacies, debts, expenses, and the widow's exemption, the widow's share is undiminished by expenses of administration, and unreduced by the payment of any part of the exemption.

*Widow's election—Undisposed residue—Intestacy.*

3. The election of a widow to take under the will of her deceased husband is in lieu of her interest in the part of the estate as to which there is a testacy, and does not deprive her of her right to a share in the residue undisposed of, but as to which there is an intestacy.

*Real Estate—Direction to sell—Reconversion.*

4. In the settlement of an estate where there is an intestacy as to the real estate, the mere direction to sell is for convenience of distribution among the parties under the intestate laws, and therefore does not work a conversion so as to change the course of inheritance, and the proceeds must be distributed as land.

*Practice, O. C.—Administration—Blending of accounts.*

5. It is bad practice to blend administration and distribution accounts. The orphans' court should of its own motion refuse to confirm an administrator's account which contains items of distribution.

*Wills—Intestacy—Presumption.*

6. Where a testator makes provisions for his wife and directs the payment of certain money legacies and in a later provision directs the

sale of his real estate, but fails to dispose of a residue of the personal estate and any part of the proceeds of the real estate, there is an intestacy as to such residue and proceeds, notwithstanding the presumption against intestacy.

Argued Oct. 12, 1910. Appeals, Nos. 21 and 41, Oct. T., 1910, by Martha A. Thompson, widow, and Eliza Martindell, sister of the testator, from decree of O. C. Washington Co., May T., 1908, No. 81, dismissing exceptions to adjudication in Estate of Jackson L. Thompson, deceased. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Reversed.

Exceptions to adjudication. Before Taylor, J.

The facts appear in the opinion of the Supreme Court.

*Errors assigned* on behalf of the widow, appellant, were among others, in dismissing exceptions to auditor's supplemental report, as follows:

1. The auditor erred in deducting the executors' commissions and other expenses from the total estate before allowing the widow's legacy.

2. The auditor erred in distributing the residue to collateral heirs in not allowing widow one-half the residue.

6. The auditor erred in deducting the widow's $300, exemption before allowing her legacy, thus taking one-half of $300, from her legacy.

*Error assigned* on behalf of the sister, Eliza Martindell, appellant, among others was in overruling exception to auditor's supplementary report, as follows:

11. The auditor erred in awarding to Mrs. Eliza Martindell the sum of $2,053.91, which was less than the amount to which she was by law entitled.

*R. W. Irwin*, with him *E. G. Wilson, Thomas Patterson*, and *James A. Wiley*, for Martha A. Thompson, appellant.—The testator clearly intended personalty to embrace his property of every description, which intent will

rule: Jacobs's Est., 140 Pa. 268; Metz v. Metz, 7 Pa. Dist. Rep. 194; McClure's App., 72 Pa. 414; Painter.v. Painter, 220 Pa. 82.

The presumptions against intestacy apply only to cases of doubtful construction and where the words of the will clearly do not cover the entire estate, they cannot be enlarged by construction: Bredlinger's App., 2 Gr. 461; Schmidth's Est., 183 Pa. 641; Ryon's App., 124 Pa. 528; Filbert's Est., 195 Pa. 295.

The fact that the widow is given a legacy in no way interferes with her right to share in the residue of which testator died intestate: Darrah v. McNair, 1 Ashmead, 236; Carman's App., 2 Pennypacker, 332; Act of April 8, 1833, P. L. 315.

*Norman E. Clark*, with him *Winfield McIlvaine*, for Eliza Martindell, appellant, and appellee, cited: Bruckman's Est., 195 Pa. 363; Shedden's Est., 210 Pa. 82; Jackson's App., 126 Pa. 105.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1911:

Jackson L. Thompson died December 14, 1906, testate leaving to survive him a widow, Martha A. Thompson, two sisters, Eliza Martindell and Permelia Hanna, and several collateral heirs. His will was dated November 12, 1906, probated December 26, 1906, and letters testamentary were granted to the executors named therein.

After directing his body to be decently interred in the Beallsville cemetery and that a suitable monument be erected, and without directing the payment of his debts and the expenses of administration, the will provides: "As to such estate as it hath pleased God to intrust me with I dispose of the same as follows, viz.:—I give and bequeath to my beloved wife Martha A. Thompson, one-half of all my personal property, less twenty-five hundred dollars which is one-half of her personal estate, all my household furniture, one-half of the income from my real

estate, until said real estate is sold. And the use of my house which I now occupy so long as she desires to live therein, free of rent and taxes." This provision is followed by certain pecuniary bequests to his sisters and others aggregating $40,200, with the direction that $1,000 of each of sixteen of the legacies of $2,000 each, shall be paid within one year after his decease, and the balance after the estate is settled up. The will then provides as follows: "I direct that all my personal property be sold by my executors, hereinafter named, as soon after my decease as convenient. As to such real estate as I shall die seized and possessed of I order and direct to be sold by my executors hereinafter named as soon as they think best and to effectuate this my intention I do hereby vest in my said executors full power and authority to dispose of my real estate in fee simple or for a term of years or otherwise in as full and large a manner in every respect as I could myself do, if living."

With the will was filed an election by Martha A. Thompson, the widow, dated December 25, 1906, to "accept under the will of my deceased husband."

Accounts were filed by the executors on February 12, and April 13, 1908, showing the gross personal assets of the estate to be $98,541.81, and the proceeds of real estate to be $8,537.50. The total debts and expenses, as disclosed by the accounts, were $9,136.38, leaving a net balance of personal estate for distribution of $89,405.43.

An auditor was appointed to make distribution of the fund in the hands of the executors. In making the distribution, the auditor held under his interpretation of the will, that the testator did not die intestate as to any part of his estate; that one-half of the entire estate, less $2,500, should go to the widow, then the other legacies and the expenses of settling his estate should be paid, and the residue should go to the next of kin exclusive of the widow. He held that the realty was converted by the terms of the will to personalty, the one-half of which was bequeathed to the widow. Exceptions to the report were

filed by the widow, alleging error in not reducing the executors' commissions and in not awarding her the interest which had accrued since the filing of the executors' accounts. Exceptions were also filed by Mrs. Eliza Martindell, one of the surviving sisters of the testator, who alleged that the auditor had erred in awarding to the widow any part of the proceeds of the real estate and in awarding to her one-half of the personal estate without any deduction for debts, expenses of administration, etc. The court sustained the widow's exceptions to the extent of reducing the executors' commissions, and also sustained Mrs. Martindell's exceptions and directed the debts and expenses of administration to be deducted from the fund before allotting to the widow the one-half of the personal estate. The widow and Mrs. Martindell have both appealed to this court.

Numerous assignments of error have been filed by each of the appellants but we need not consider them seriatim. The questions raised by the assignments require the construction of the testator's will, and the fund for distribution, the estate of the testator, must be distributed in accordance with the proper interpretation of the instrument.

There is no occasion to invoke the aid of artificial rules of construction in the interpretation of the testator's will. There is no ambiguity or uncertainty in the language used by him in disposing of his estate. Hence, his intention must be ascertained from the words employed in the will, and neither surmises as to such intention nor the application of rules of construction can be permitted to defeat it. While it is true that in construing any part of a will the entire instrument must be considered, yet this rule, like all other rules of interpretation, is only available when a necessity for its application arises. There can be no such necessity when the testator uses language that is plain and certain in its meaning, and there is no conflict in the different provisions of the will. A general scheme of distribution cannot be attributed

to the testator which will defeat the intention to dispose of the estate clearly disclosed by the plain and express language of the will.

In the case at bar the testator first provides for his wife. He gives her one-half of all his "personal property," less $2,500, all of his household furniture, one-half of the income from his real estate until it is sold, and the use of his home so long as she desires to live there. In no other part of the will does he refer to his wife, or make any provision for her. Standing alone, these bequests are as plain as language can make them. If the testator had concluded the instrument with these provisions of the will, there certainly could be no difficulty in ascertaining his intention, or what part of the testator's estate the legatee took. This must be conceded. In addition to the other bequests contained in this paragraph, the widow takes the one-half of the personal estate which the testator had at the time of his death. That is, she is entitled to one-half of his goods, chattels, securities and moneys. Under no pretense could the words "personal estate" have been construed to include the real estate, so as to give her the one-half of it. The testator knew that he was possessed of both personal and real estate, and he recognized the distinction between them. There is nothing, however, in the language of the bequest that confers upon the widow the right to participate in the real estate or its proceeds. Instead of bequeathing her the one-half of the personal estate, he might have specified the particular personal property which he possessed, and the one-half of which he gave her, but his bequest is sufficiently specific to limit it to personalty, and to exclude her from participation in the realty.

It is contended by the widow, and it was so held by the orphans' court, that the personal property bequeathed the widow in the first paragraph of the will includes the proceeds of his real estate; that the subsequent direction to the executors to sell the real estate worked a conversion and the proceeds became personal property within

the meaning of the bequest to the widow; and that, there-
fore, she was entitled to one-half of such proceeds in addi-
tion to the one-half of the personal property. But this
contention we do not deem tenable. It is not supported
by a proper interpretation of any part of the will, and
rests upon a misapprehension of the purpose of the tes-
tator in directing his executors to sell his real estate.
After he had bequeathed the one-half of his personal
property to the widow in the first part of the will, the
testator subsequently and in the latter part of the in-
strument directed his executors to sell both his personal
and real estate. All the bequests contained in his will
were made prior to the direction to sell the property.
The purpose the testator had in view in directing the
real as well as the personal estate to be sold was for dis-
tribution. The widow would be entitled to one-half of
the proceeds of the personal property. The testator
may have supposed that it would require the proceeds
of the real estate to pay the other legacies given in the
will. He had no thought of converting the real estate
into personal property for the purpose of bringing it
within the terms of the bequest to his widow. If such
had been his intention, he could and doubtless would
have directed in the first instance the sale of all his per-
sonal and real property, the proceeds to form a common
fund, and would have bequeathed the one-half of it to
his widow. This, however, he did not do.

It is contended and so held by the court below that it
was the intention of the testator to put the proceeds of
the sale of the property in a common fund, and dispose
of the entire estate as money, because "he directs that
both his personal and real estate should be sold." We
do not think the mere direction to sell the personal and
real estate warrants the conclusion that he intended to
make a common fund of the proceeds of sale, and dis-
tribute the proceeds of the real estate as personalty. It
is inconceivable that he would have undertaken to ac-
complish this purpose in the indirect method pursued in

the will, when he could briefly have bequeathed her the one-half of the whole estate. Throughout the instrument he recognizes the distinction between his personal property and real estate. He does this in the very paragraph in which he makes the bequests to his wife, and in connection with the bequests. He gives her the one-half of the personal property, and the one-half of the income from his real estate. Subsequently, and after the bequest of all the legacies, he directs, in separate clauses, his executors to sell his personal property and his real estate, but does not direct the application of the proceeds of either, nor state a purpose for converting the property into money. Neither does he indicate in any part of the will an intention to distribute the proceeds of the real estate as personal property.

We think the widow is entitled to the one-half of the whole personal estate which the testator owned at the time of his death. There is no more reason why it should pay the debts and the expenses of administration of the estate than the other legacies. The amount of her legacy was made certain by the language used, the one-half of the personal estate, and the will having directed the personal estate to be sold, the testator contemplated his widow receiving one-half of the proceeds of the sale. By this means the amount of the legacy was definitely fixed, and the other one-half of the personal estate being sufficient to pay all the pecuniary legacies, the debts and the expenses of administration, the widow's legacy cannot be diminished by the payment of the debts and expenses out of her share of the estate. We think this interpretation will carry out the intention of the testator. He bequeathed his widow "one-half of all my personal property," and unless the full one-half, undiminished by the debts and expenses of administration of the estate, is received by her, the manifest intention of the testator will be defeated.

The Act of April 14, 1851, P. L. 612, 1 Purd. 1092, provides that the widow of any decedent, dying testate

or intestate, may retain property belonging to the estate to the value of $300. As there is sufficient personal estate to pay this exemption and all the legacies, including that of the widow, it follows that the widow's legacy cannot be abated or reduced by requiring any part of the exemption to be paid out of it. With equal reason, the other legacies should pay their proportionate part of the exemption, but it has not been suggested that they are subject to abatement for that purpose.

The account of the executors shows that the proceeds of the personal property are in excess of what is required to pay the debts, expenses of administration, and the legacies, including the widow's legacy. As the testator did not direct otherwise, the law requires that they be paid out of the personal estate. This leaves a residue of the personalty and all the proceeds of the real estate to be disposed of. There is no residuary clause in the will, and the testator has not otherwise provided for the distribution of the residue of the estate. It is clear, therefore, that as to this fund there is an intestacy. The testator may or may not have intended to dispose of it, or may have thought he had done so, but in view of the fact that he did not devise or bequeath it, it is idle to speculate on his intentions. We must assume that he intended to die intestate as to the undisposed part of his estate. The court cannot conjecture the testator's intentions and supply the omission. The presumption that he did not intend to die intestate as to a part of his estate, must fall when confronted with the fact that he did die intestate as to that part of the estate. There being an intestacy as to the residue of the estate, including all the real estate, it must be distributed to those entitled under the intestate laws of the commonwealth. The election of the widow to take under the will does not deprive her of the right to a share of the residue of the estate, of which the testator died intestate. The bequest to the widow was not a fractional part of the whole estate bequeathed in lieu of dower, as in Jackson's App., 126 Pa.

105, but was a bequest of an interest in part of the testator's personal property. Her election to take the legacy under the will was in lieu of her interest in the part of the estate as to which there was a testacy, but not as to the part of the estate as to which there was an intestacy: Carman's App., 2 Penny. 332; Reed's App., 82 Pa. 428; De Silver's Est., 142 Pa. 74.

We have held that the bequest to the widow of one-half of all the testator's personal property did not include the proceeds of the real estate, and as to that he died intestate. As pointed out above, the direction to sell the real and personal estate was in two separate clauses of the will, and there was no intention to produce a common fund for distribution. In neither instance did the testator direct the sale for any specific purpose, or direct the manner in which the proceeds should be applied or distributed. If he had devised the proceeds of the real estate to specific legatees, it is clear that they could have elected to take the land as such. As there was an intestacy as to the real estate, the mere direction to sell was for the convenience of distribution among the parties entitled under the intestate laws, and, therefore, did not work a conversion so as to change the course of inheritance: Glentworth's Est., 221 Pa. 329; Painter v. Painter, 220 Pa. 82. In the former case it is said (p. 331): "The direction to sell was merely for convenience of distribution, and as conversion never operates, except to carry out the intention of the testator, it could not in this case alter the course of inheritance." The proceeds of the real estate, therefore, must be distributed as land.

The widow is entitled to interest on her legacy, if we understand the facts correctly, but it is claimed that it was allowed. The court's opinion on the exception to the auditor's report gives us no light on the subject. The matter can be adjusted when the case is remitted to the orphans' court.

We desire to direct attention to the improper practice which seems to prevail in the court below in regard to

blending administration and distribution accounts. Both accounts are open to this criticism, and by reason of it our work has been made more laborious in reviewing this record. On both the debit and credit sides of the two accounts, items of administration and distribution are mixed with each other. The distribution account as filed is not even a separate account attached to the administration account, but the items of administration and distribution are all in the same account. Neither account shows, as it should, the balance for distribution after the payment of the debts and expenses of administration. Of this practice Chief Justice GIBSON said more than half a century ago, in Yundt's Est., 6 Pa. 35, 36: "An absurd, but favorite notion prevails among those who have to do with the settlement of estates in the orphans' court, that it is not only possible, but preferable, to blend a distribution account with the administration account; and thus settle the whole estate at a dash. Those who suppose so know little of the mischiefs of confusion, or the value of order." We have uniformly condemned the practice. Items of distribution are not properly a part of an administration account, and the decree of confirmation is not conclusive evidence of their payment. The orphans' court may and should of its own motion refuse to confirm such an account.

We are of opinion that:

1. The widow is entitled to the one-half of the personal property or its proceeds, less $2,500, excluding the proceeds of the real estate, together with the household furniture, one-half of the income of the real estate until sold, and the use of the house, free of rent and taxes.

2. The widow's legacy should not be reduced by deducting therefrom her exemption of $300 or any part thereof. The exemption must be paid out of the other one-half of the proceeds of the personal estate.

3. The will did not work a conversion of the real estate so as to make it personalty for any purpose, and it must

be distributed as real estate, the widow being entitled to her share thereof under the intestate laws.

4. The testator died intestate as to the real estate, and the residue of the personal estate undisposed of by his will.

In so far as the matters complained of in the assignments of error in both appeals are not in accord with the views above expressed, the assignments are sustained and the decree is reversed and the record is remitted to the orphans' court of Washington county to make distribution in accordance with this opinion. The costs of these appeals to be paid out of the personal estate fund for distribution.