## Ostheimer's Estate

*Brooks, Curtze & Silin,* for accountants.
*Gunnison, Fish, Gifford & Chapin,* for claimant.

WAITE, P. J., July 3, 1936.—Mortimer Ostheimer died testate on January 31, 1933. His last will and testament, dated October 17, 1930, disposing of an estate in excess of a quarter of a million dollars, was duly probated February 10, 1933. The matter is now before the court on the audit of the first and final account of the executor requiring an interpretation of decedent's will to determine the share which the widow, Blanche B. Ostheimer, takes thereunder. Looking at this entire will from its four corners, we find that there are only four clauses, the first, second, ninth, and tenth, having any bearing on the question now before us.

The first paragraph of the will provides: "I order and direct that all my just debts and funeral expenses be first fully paid and satisfied by my executors hereinafter named."

The second paragraph of the will is as follows: "I give, devise and bequeath unto my beloved wife, Blanche B. Ostheimer, one-half of my entire estate."

The third, fourth, fifth, sixth, seventh, and eighth paragraphs of the will make pecuniary bequests to charities and to certain of testator's relatives.

The ninth paragraph of the will then provides:

"All of the above bequests are to be free and clear of any transfer inheritance taxes imposed thereon, and I direct that said transfer inheritance taxes shall be paid out of my estate, so that each legatee shall receive in full the full legacy bequeathed by the preceding paragraphs of this will."

The tenth paragraph of the will is a residuary clause and provides:

"All the rest, residue, and remainder of my estate, real, personal and mixed, whatsoever and wheresoever the same may be at the time of my decease, I give, devise and bequeath unto my beloved mother, Emma Ostheimer, her heirs and assigns forever."

Decedent directs his debts and funeral expenses to be first fully paid. These are to be ascertained, paid and deducted from the total assets of the estate before the legacy to the widow as provided in the second paragraph can be determined. "Funeral expenses" is self-explanatory, and "all my just debts" includes all lawful and just obligations of decedent at the time of his death. The attorney fees and costs of administration are obligations against decedent's property arising after his death and incident to the settlement of the estate and are not debts of decedent, and therefore are not to be deducted before computing the widow's legacy: See Reynold's Estate, 195 Pa. 225, 229.

In Shaw v. McCameron et al., 11 S. & R. 252, testator devised to his only child one half of his estate, real and personal, and directed his executors to put it out at interest during her life and pay the proceeds to her, with power to dispose of the principal by will. "The rest or remaining part" he gave to his brothers and sisters. The court held that the child took one half of the clear estate, without deduction on account of debts, which were to be considered as paid out of the residuary part devised to his brothers and sisters. In the opinion, Justice Gibson says:

"In the absence of clear, actual intention, and where the devise is a provision for a child, the construction ought to be as favourable as the words will bear; and the word *estate*, may well mean what a man has in possession, without regard to the state of his debts. . . . Another strong feature is, that the devise to the brothers and sisters, is

of a residuary nature; and residuary bequests generally bear the burden of the debts. But I found my opinion chiefly on the consideration, that the bequest to the plaintiff is a provision for a child, which will always be decreed as favourably for the child as the words will bear."

The above language is as applicable to a bequest to a widow as to one to a child. The one is usually as great an object of a testator's solicitude and beneficence as the other.

In Thompson's Estate, 229 Pa. 542, a gift of "one-half of all my personal property" to testator's widow was construed to mean one half without deduction for debts, legacies, or expenses of administration.

In the course of his opinion Justice Mestrezat said, at page 549:

"We think the widow is entitled to the one-half of the whole personal estate which the testator owned at the time of his death. There is no more reason why it should pay the debts and the expenses of administration of the estate than the other legacies. The amount of her legacy was made certain by the language used, the one-half of the personal estate, and the will having directed the personal estate to be sold, the testator contemplated his widow receiving one-half of the proceeds of the sale. By this means the amount of the legacy was definitely fixed, and the other one-half of the personal estate being sufficient to pay all the pecuniary legacies, the debts and the expenses of administration, the widow's legacy cannot be diminished by the payment of the debts and expenses out of her share of the estate. We think this interpretation will carry out the intention of the testator. He bequeathed his widow 'one-half of all my personal property,' and unless the full one-half, undiminished by the debts and expenses of administration of the estate, is received by her, the manifest intention of the testator will be defeated."

The ninth paragraph of the will provides that all of the above bequests, which includes the bequest of the widow,

are "to be free and clear of any transfer inheritance taxes." It is agreed that the above clause relates to the Pennsylvania transfer inheritance taxes, but it is urged that these words do not include the Federal estate taxes. In other words, that the Federal estate taxes are not transfer taxes. With this we cannot agree. In our opinion both are transfer inheritance taxes and intended by testator to be paid out of the residue of his estate. While the Federal tax is sometimes called an "estate tax", sometimes a "death tax", it is in reality a transfer inheritance tax. The Federal estate tax is imposed upon the transfer of the net estate of every person dying after September 8, 1916. The tax is not laid upon the property but upon the transfer of the entire net estate and not any particular legacy, devise, or distributive share.

In Heiner, etc., v. Donnan et al., 285 U. S. 312, Mr. Justice Sutherland says:

"Section 301 of the Revenue Act of 1926 [which is a supplement to the Revenue Act of 1916] imposes a tax 'upon the transfer of the net estate of every decedent,' etc. There can be no doubt as to the meaning of this language. The thing taxed is the transmission of property from the dead to the living. It does not include pure gifts *inter vivos*. The tax rests, in essence, 'upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested . . . it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties.' Knowlton v. Moore, 178 U. S. 41, 56, 57."

See also Coolidge et al., Trustees, v. Long, etc., 282 U. S. 582.

In the instant case, after directing the payment of said transfer inheritance tax out of the estate testator further provides that the said payment shall be made "so that each

legatee shall receive in full the full legacy bequeathed by the preceding paragraphs of this will." If only the State transfer tax is paid out of the residue and the Federal tax deducted from the legacy, then the legatee would not receive "in full the full legacy" bequeathed by the second paragraph of the will, and this would be contrary to the clearly expressed intention of testator. It is to be noted that this paragraph relates only to the preceding legacies which include the one to the widow and does not relate to the subsequent residuary bequest to the mother.

It is urged on behalf of the widow as an additional reason for awarding one half of this entire estate to the widow that it is a specific as distinguished from a general legacy and therefore not liable for attorney fees and administration expenses. In our opinion this is a general and not a specific legacy. A general legacy is one payable out of the general assets of testator's estate, such as a gift of money or other thing in quantity, and not in any way separated or distinguished from other things of like kind. A specific legacy, as the term imports, is a gift or bequest of some definite, specific thing, something which is capable of being designated and identified, as "my Tiffany diamond ring", or "my Winchester repeating rifle". In Crone's Appeal, 103 Pa. 571, Mr. Justice Trunkey says at page 576: "A mere bequest of 'all my personal estate', or a fractional part thereof, has never been held to mean a specific legacy." See also Walker's Estate, 3 Rawle 229, and Martin et al. v. Fry, 17 S. & R. 426.

But whether the bequest in the instant case is specific or general is immaterial since the intention of testator, as clearly expressed by the words used, shows an intention to give, devise, and bequeath to his wife one half of his entire estate after deducting debts and funeral expenses, as pointed out in the foregoing opinion.

By the plain language of the second paragraph of this will an absolute one half part of decedent's entire estate, after payment of debts and funeral expenses as provided in the first paragraph, is given to the widow.

630

The intention of a testator as presented in the language of his will is, as has often been said, the pole star by which courts must be governed in interpreting a will. That no construction is required or permitted where a testator's intention is clearly and unambiguously expressed is a rule of reason and common sense as well as of law.

In a recent case, Garrett's Estate, 321 Pa. 74, it is held that where in a will an absolute estate is given it will not be cut down by subsequent language unless the intention to do so is clear. By the subsequent language in this will no clear intent, in fact no intent whatever, to cut down the absolute "one-half of my entire estate" given, devised, and bequeathed in the said second paragraph is shown.

In our opinion, therefore, Blanche B. Ostheimer, the surviving widow of Mortimer Ostheimer, testator, is entitled to receive one half of decedent's entire estate after the payment of decedent's debts and funeral expenses as herein set forth. Both State and Federal transfer taxes are to be paid out of the residuary estate.

### Order

Distribution is directed to be made in accordance herewith.

From Burton R. Laub, Erie.