**Lauro Estate**

*Joseph J. McGrory*, for exceptants.
*Alphonso Santangelo*, contra.

TAXIS, P. J., June 23, 1961.—. . . Decedent was a member of the Societa di Mutuo Soccorso Maria S. S. Ma del Soccorso di Sciacca of Norristown, Pa., a corporation formed for beneficial and protective purposes. Articles 66-69 of the association provide for death benefits. The pertinent language is as follows:

"Upon the death of a member, the family shall have the right to the death benefit from the Death Fund of Four Hundred ($400.00) Dollars . . .

"These sums shall be paid to the heirs or legitimate heirs or in accordance with their last will and testament thirty (30) days after the date of the funeral . . ."

In the present case, the death benefit of $425 was paid by the association by check directly to decedent's widow. The estate claims the death benefit and demands that it be deducted from the distributive share due the widow.

The payment of a death benefit by an association is governed by the by-laws or rules of the association: Thomas v. Robinson, 162 Pa. Superior Ct. 454. Since in the present case the benefit is expressly made payable to the family of the member, his estate has no interest: Luckenbaugh's Estate, 60 D. & C. 452. The fund is not a part of the assets of the estate and the executor should not account for it as such. Accordingly, the death benefit paid by the Societa di Mutuo Soccorso Maria S. S. Ma del Soccorso di Sciacca of Norristown, Pa., is stricken from the inventory and account.

3. There exists, among families of the national origin of this decedent, a custom of receiving donations of money from persons who attend the funeral viewing. In the present case, $75 was so received by the funeral director, who, in turn, paid over the money to the widow. The executors claim the $75 for the estate. The funeral director, Mr. John Raffeo, testified that he paid over the money to Mrs. Lauro because the custom has been to "turn the monies over to the next of kin, the immediate family." Another funeral director, Mr. Ralph C. Volpe, corroborated Mr. Raffeo's testimony to the effect that customarily the funeral donations are paid over to the next of kin. A careful review of all the evidence does not reveal any intention that these funeral donations should become a part of decedent's estate: Ciccarelli Estate, 5 Fiduc. Rep. 276. Accordingly, the $75 funeral donations are stricken from the account for the reason that it is not properly an asset of this estate.

4. Testator provided in Item Second of his will, in part, as follows:

"I direct my executors not to spend more than Fifteen Hundred ($1500.00) Dollars for my funeral."

The account shows the following items in regard to funeral expenses:

The Raffeo Funeral Home, Funeral Service $1,481.40
The Raffeo Funeral Home, cash outlay. . . .    99.70
Anna Catanese, flowers for funeral. . . . . . .    4.16

The account also shows the following items in regard to the decedent's grave marker:

Quakertown Memorial Works, marker for Lauro grave . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$90.00
Edward J. Kelly, foundation work to John Lauro marker . . . . . . . . . . . . . . . . . . . . . . . . . . 25.00

Decedent's widow contends that the executor improperly exceeded the $1,500 limitation stated in the will and asks that the executors be surcharged for such excess.

The items of expenditure relative to decedent's grave marker are funeral expenses. See Kotal v. Goldberg, 375 Pa. 397; Kreeger's Estate, 277 Pa. 326. In the latter case, the court adopted the following language: " '. . . in any event the act of burial includes all the usual incidents of decent burial, of which one, at least, is the erection of a suitable tombstone.' "

In total, therefore, the funeral expenses in the present estate totaled $1,700.26, and exceeded the $1,500 limitation by $200.26. Although the testimony indicates that the widow-objector helped to arrange for the funeral and made certain selections where selections were to be made, the testimony and exhibits fall far short of establishing any agreement by Mrs. Lauro that the total expenditures for funeral expenses should exceed $1,500. The contents of the will were known to the executors before funeral arrangements were completed. Therefore, the rule of Miller Estate, 75 D. & C. 540, is inapplicable.

Subject to the rights of creditors, a testator may dispose of his estate as he sees fit and his clearly expressed intention will be respected by the courts. Cf. Petruzis Estate, 4 Fiduc. Rep. 278. In the present case,

the executors have exceeded the express limitation of testator and should be surcharged therefor.

Accordingly, a credit of $1,500 is allowed for funeral expenses and the executors are surcharged in the amount of $200.26.

Testator provided in Item Fourth of his will as follows:

"I give and bequeath to my wife, Benedetta, an amount equal to the share of my estate to which she would be entitled under the intestate laws in existence at the time of my death."

This language constitutes a general pecuniary legacy. Cf. Althouse Estate, 10 Fiduc. Rep. 537. The widow is entitled to an amount of cash which is equal in value to one-third of the gross estate at the time of decedent's death. Being a general bequest of cash, it has priority of distribution over property devised or bequeathed in the residuary clause: Greenlee Estate, 14 D. & C. 2d 627, affirmed 394 Pa. 144. Furthermore, section 753 of the Fiduciaries Act of April 18, 1949, P. L. 512, is applicable and interest at the rate of three per centum per annum from one year after the death of decedent until the payment of the legacy is due from the estate.

6. The accountants show in their distribution account an amount of $200 allocated to Mrs. Lauro on October 20, 1959. As a matter of fact, this money was given to Mrs. Lauro by Mrs. Tufillaro, one of the coexecutors, to purchase clothing for the funeral. Mrs. Lauro argues that this should be considered as a transaction between Mrs. Tufillaro and herself as individuals and not as executrix and beneficiary. Mrs. Lauro, therefore, although admitting receipt of the $200 and an obligation to return the money, objects to the accountant's designation of the $200 as a distribution. While the $200 payment by Mrs. Tufillaro may not have been made originally as a distribution, this

court believes that in all of the circumstances, it is fair and equitable to now consider it as a distribution. Accordingly, the objections relating to the account insofar as it designates the $200 payment as a distribution are dismissed.

Subject to distributions already properly made, the balance for distribution is awarded as suggested under the last paragraph of the petition for adjudication. The one-third widow's interest is a general pecuniary legacy as noted above and is an amount equal to one-third of the gross estate, plus interest thereon at the rate of three per centum per annum from one year after the death of decedent until the payment of the legacy . . .

The account, as modified, is confirmed, and it is hereby ordered and decreed that Lena Tufillaro and A. Benjamin Scirica, executors, as aforesaid, forthwith pay the distributions herein awarded.

And now, June 23, 1961, this adjudication is confirmed nisi.

### Opinion Sur Exceptions

TAXIS, P. J., October 25, 1961.—The auditing judge filed an adjudication upon the first and final account of the executors on June 23, 1961. Four exceptions were filed by the accountants on June 27, 1961. Three of the exceptions were withdrawn by agreement of counsel leaving one live exception.

The remaining exception is concerned with the conclusion of the auditing judge that the widow is entitled to a distribution of cash which is equal in value to one-third of the gross estate.

Testator provided in Item Fourth of his will as follows:

"I give and bequeath to my wife, Benedetta, an amount equal to the share of my estate to which she would be entitled under the intestate laws in existence at the time of my death."

As stated by the auditing judge, this language constitutes a general pecuniary legacy. Cf. Althouse Estate, 404 Pa. 412. The auditing judge then went on to say that the widow is entitled to an amount of cash which is equal in value to one-third of the gross estate. Exceptants contend that the widow is entitled to an amount of cash which is equal in value to one-third of the net estate.

Stong's Estate, 58 Montg. 303, 304, was concerned with testamentary provisions reading as follows:

"Second: I give, devise and bequeath unto Emily Kulp, my wife, who deserted me many years ago one-third of my estate as required by law."

Although the court awarded the widow one-third of the estate, undiminished by the deduction of pecuniary legacies, an examination of the record pages reveals that the widow was given a proportion of the net estate rather than the gross estate.

In Martin's Estate, 59 D & C 529, the widow was given "an equal one-third share of my estate." In a succeeding paragraph, testator gave "all of the rest, residue and remainder of my property" to his children by a previous marriage. There were no other beneficiaries. The bequest to the widow was construed to entitle her to one-third of the net estate.

Counsel for the widow urges Benn Estate, 18 D. & C. 2d 515, as authority for their position that the widow is entitled to one-third of the gross estate. The gift to the widow in Benn Estate was "one-half of all my estate, real and personal." On the authority of Thompson's Estate, 229 Pa. 542, and Ostheimer's Estate, 28 D. & C. 624, this court decided the widow was entitled to one-half of the gross estate, subject only to the payment of decedent's debts and funeral expenses, but not the administration expenses, taxes, and legacies.

The court noted that the gift in Thompson's Estate, supra, was "half of all my personal property", and

that the gift in Martin's Estate, supra, did not contain the word "all." The court concluded, therefore, that Martin's Estate, supra, was distinguishable and inapplicable and that, as in Thompson's Estate, the gift to the widow was a share of the gross estate. The gift in Ostheimer's Estate, supra, was "one-half of my entire estate." The word entire, of course, puts that gift into the same category with Thompson's Estate and Benn Estate.

However, the present case, because of the absence of the word "all" or any similar word, is in the same category as Martin's Estate, supra. Therefore, the widow should receive an amount of cash equal to one-third of the net estate, which is determined by deducting debts, funeral expenses, and administration expenses. By direction of the will taxes are to be paid from the residue. As in Stong's Estate, supra, the widow should receive a proportion of the estate undiminished by the deduction of pecuniary legacies.